Exhibit A

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| COLUMBUS LIFE INSURANCE COMPANY, | |
| Plaintiff, | C.A. No. N20C- |
| | CCLD |
| v. | TRIAL BY JURY OF TWELVE DEMANDED |
| WELLS FARGO BANK, N.A., as Securities Intermediary | |
| Defendant. | |

### SUMMONS

**THE STATE OF DELAWARE**
**TO PLAINTIFF'S COUNSEL – VIA LONG-ARM STATUTE**
**YOU ARE COMMANDED:**

To summon the above-named Defendant, Wells Fargo Bank, N.A., as Securities Intermediary, so that, within 20 days after service hereof upon Defendant, exclusive of the day of service, Defendant shall serve upon Plaintiff's attorney, whose address is 800 N. King Street, Suite 303, Wilmington, DE 19801, an answer to the Complaint (and, if the Complaint contains a specific notation requiring the defendant to answer any or all allegations of the Complaint by Affidavit, an Affidavit of Defense).

To serve upon Defendant a copy hereof and of the Complaint.

**Dated:**_____

**LISA M. GONZALEZ**
**Chief Deputy Prothonotary**

_____
**Per Deputy**

**TO THE ABOVE NAMED DEFENDANT:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on Plaintiff's attorney named above an Answer to the Complaint (and, if the Complaint contains a specific notation requiring the defendant to answer any or all allegations of the Complaint by Affidavit, an Affidavit of Defense), judgment by default will be rendered against you for the relief demanded in the Complaint.

**LISA M. GONZALEZ**
**Chief Deputy Prothonotary**

**Per Deputy**

# SUPERIOR COURT
## CIVIL CASE INFORMATION STATEMENT (CIS)

COUNTY: [ N ]   K   S        CIVIL ACTION NUMBER: _____

---

Caption:

Columbus Life Insurance Company,

Plaintiff,

v.

Wells Fargo Bank, N.A. ,

as Securities Intermediary,

Defendant.

---

Civil Case Code: **CCLD** _____

Civil Case Type: **Complex Commercial Litigation Division**
(SEE REVERSE SIDE FOR CODE AND TYPE)

MANDATORY NON-BINDING ARBITRATION (MNA) _____

Name and Status of Party filing document:

**Columbus Life Insurance Company, Plaintiff**

Document Type: (E.G.; COMPLAINT; ANSWER WITH COUNTERCLAIM)

**Complaint**

JURY DEMAND:   YES **X**      NO ____

---

ATTORNEY NAME(S):

Donald L. Gouge, Jr.

ATTORNEY ID(S):

2234

FIRM NAME:

Donald L. Gouge, Jr., LLC

ADDRESS:

800 N. King Street, Suite 303

Wilmington, Delaware 19801

TELEPHONE NUMBER:

302-658-1800

FAX NUMBER:

302-225-3634

E-MAIL ADDRESS:

DGouge@Gougelaw.com

---

IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT OR ANY RELATED CASES THAT HAVE BEEN CLOSED IN THIS COURT WITHIN THE LAST TWO YEARS BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS:

Columbus Life Insurance Company v. Wilmington Trust Company, N19C-11-175 PRW CCLD,

N20C-05-238 EMD CCLD/N20C-05-252 PRW CCLD/N20C-05-253 PRW CCLD

EXPLAIN THE RELATIONSHIP(S):

The matters all involve the same plaintiff, the same or similar/affiliated entity-defendants, and similar facts and evidence, but involve different insurance policies insuring the lives of different insureds.

OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:

None

(IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE)

---

**THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.**

# SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS) INSTRUCTIONS

## CIVIL CASE TYPE

Please select the appropriate civil case code and case type (e.g., **CODE - AADM** and **TYPE - Administrative Agency**) from the list below. Enter this information in the designated spaces on the Case Information Statement.

**APPEALS**
AADM - Administrative Agency
ACER -  Certiorari
ACCP -  Court of Common Pleas
AIAB -   Industrial Accident Board
APSC -  Public Service Commission
AUIB -  Unemployment Insurance Appeal Board

**COMPLAINTS**
CABT – Abatement
CASB – Asbestos
CAAA - Auto Arb Appeal
CMIS - Civil Miscellaneous
CACT - Class Action
CCON — Condemnation
CCLD – Complex Commercial Litigation Division **(NCC ONLY)**
CDBT - Debt/Breach of Contract
CDEJ - Declaratory Judgment
CDEF - Defamation
CEJM - Ejectment
CATT - Foreign & Domestic Attachment
CFJG - Foreign Judgment
CFRD - Fraud Enforcement
CINT -  Interpleader
CLEM - Lemon Law
CLIB -  Libel
CMAL - Malpractice
CMED - Medical Malpractice
CPIN -  Personal Injury
CPIA -  Personal Injury Auto
CPRL - Products Liability
CPRD - Property Damage
CRPV - Replevin
CSPD - Summary Proceedings Dispute
CCCP - Transfer from CCP
CCHA - Transfer from Chancery

**MASS TORT**
CABI - Abilify Cases
CBEN - Benzene Cases
CFAR - Farxiga Cases
CHON - Honeywell Cases
CMON - Monsanto Cases
CPEL -  Pelvic Mesh Cases
CPLX -  Plavix Cases
CPPI -  PPI Cases
CTAL - Talc Cases
CTAX - Taxotere Cases
CXAR - Xarelto Cases

**INVOLUNTARY COMMITMENTS**
INVC- Involuntary Commitment

**MISCELLANEOUS**
MAGM - AG Motion - Civil/Criminal Investigations *
MADB - Appeal from Disability Board *
MAFF -  Application for Forfeiture
MAAT -  Appointment of Attorney
MGAR -  Appointment of Guardianship
MCED -  Cease and Desist Order
MCON -  Civil Contempt/Capias
MCVP -  Civil Penalty
MSOJ -  Compel Satisfaction of Judgment
MSAM -  Compel Satisfaction of Mortgage
MCTO -  Consent Order
MIND -   Destruction of Indicia of Arrest *
MESP -  Excess Sheriff Proceeds
MHAC -  Habeas Corpus
MTOX -  Hazardous Substance Cleanup
MFOR -  Intercept of Forfeited Money
MISS -   Issuance of Subpoena
MLEX -  Lien Extension
MMAN -  Mandamus
MWIT -  Material Witness *
MWOT -  Material Witness - Out of State
MRAT -  Motion for Risk Assessment
MROP -  Petition for Return of Property
MCRO -  Petition Requesting Order
MROD -  Road Resolution
MSEL -   Sell Real Estate for Property Tax
MSEM -  Set Aside Satisfaction of Mortgage
MSSS -  Set Aside Sheriff's Sale
MSET -  Structured Settlement
MTAX -  Tax Ditches
MREF -  Tax Intercept
MLAG -  Tax Lagoons
MVAC -  Vacate Public Road
MPOS -  Writ of Possession
MPRO -  Writ of Prohibition

**MORTGAGES**
MCOM - Mortgage Commercial
MMED - Mortgage Mediation
MORT - Mortgage Non-Mediation (Res.)

**MECHANICS LIENS**
LIEN - Mechanics Lien

## * Not eFiled

## DUTY OF THE PLAINTIFF

Each plaintiff/counsel shall complete the attached Civil Case Information Statement (CIS) and file with the complaint.

## DUTY OF THE DEFENDANT

Each defendant/counsel shall complete the attached Civil Case Information Statement (CIS) and file with the answer and/or first responsive pleading.

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| COLUMBUS LIFE INSURANCE COMPANY, | C.A. No. N20C- |
| Plaintiff, | CCLD |
| v. | TRIAL BY JURY OF TWELVE DEMANDED |
| WELLS FARGO BANK, N.A., as Securities Intermediary | |
| Defendant. | |

## COMPLAINT

Plaintiff, Columbus Life Insurance Company ("Columbus Life"), files and asserts its Complaint against Defendant, Wells Fargo Bank, N.A. ("Wells Fargo"), as Securities Intermediary, and in support thereof, alleges as follows:

## PARTIES

1.     Columbus Life is a life insurance company organized and existing under the laws of Ohio, with its principal place of business at 400 East Fourth Street, Cincinnati, Ohio, 45202. Columbus Life is a citizen of the state of Ohio.

2.     Upon information and belief, Defendant, Wells Fargo, is a national banking association with its principal place of business located in South Dakota. Wells Fargo is a citizen of the State of South Dakota. Wells Fargo is named as a party to this action solely because, in its capacity as Securities Intermediary, it holds bare legal title as administrator of the Policy (as defined herein).

## JURISDICTION AND VENUE

3.     This Court has subject-matter jurisdiction under Article IV, § 7 of the Delaware Constitution, 10 Del. C. § 541, and 10 Del. C. § 6501, *et seq.*, because there is an actual and ripe controversy between the parties regarding the validity and enforceability of the Policy (as defined herein).

4.     Venue is proper in the Superior Court of Delaware because a substantial part of the events giving rise to Columbus Life's claims occurred in the State of Delaware.

## FACTS COMMON TO ALL CLAIMS

5.     As stated by the Supreme Court of Delaware, it is well recognized that, "[s]ince the initial creation of life insurance during the sixteenth century, speculators have sought to use insurance to wager on the lives of strangers." *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059, 1069 (Del. 2011). Insurance policies which are procured as a wager on the life of the person insured not only violate Delaware public policy and its constitutional prohibition on wagering, but they also violate the state's insurable interest requirement, which precludes investors from manufacturing life insurance policies for the purpose of resale. *Id.*

6.     Although human life speculators have been present for hundreds of years, never has the problem been more wide-spread or involved such vast amounts of money than in recent years. In the early 2000s, institutional investors began pooling large blocks of high-value life insurance policies into special purpose

vehicles, such as tax-exempt entities or trusts, the interests of which were effectively securitized and sold to other investors.

7. It is well established, however, that in the early 2000s, there was not a sufficient supply of existing life insurance policies to satisfy investor demand. In particular, investors were interested in high face amount policies insuring the lives of senior citizens, but there were only "a limited number of seniors who had unwanted policies of sufficiently high value." *Price Dawe*, 28 A.3d at 1070. "As a result, STOLI promoters sought to solve the supply side shortage by generating new, high value policies." *Id.* These policies are often referred to as STOLI—meaning stranger origination life insurance. *Id.*

8. In the STOLI industry, entities known as "funders"—worked with a nationwide network of insurance producers, who, acting as the funders' agents, assisted the funders by, among other things, identifying senior citizens meeting the funders' investment criteria and influencing those seniors to become involved in the STOLI transactions the funders were orchestrating.

9. The STOLI transactions orchestrated by these funders and their agents were presented to hand-selected senior citizens in rosy terms that camouflaged the transactions' impropriety as being a "risk-free" opportunity, "just a good deal," or as being similar to "hitting the lottery" or acquiring a winning "bingo" card.

10. The specific mechanisms by which each funder's STOLI program operated could and often did vary in one respect or another. But each shared basic similarities including that the policies at issue were procured by third parties that lacked an insurable interest in the insureds and that sought to wager on the lives of the insureds.

11. In Delaware and other places, not only do these STOLI policies violate public policy and constitutional bans on wagering and insurable interest laws, but they take advantage of senior citizens and otherwise convert a legitimate life insurance product into an illigitimate cash machine whereby a stranger to the insured is more interested in seeing the insured dead than alive.

A. **The Application for and Issuance of a $3 Million Life Insurance Policy**

12. As early as April 2004, Columbus Life began receiving inquiries regarding a potential $3 million life insurance policy on the life of Ann Snyder.

13. On or about June 25, 2004, Columbus Life received an "Application for Life Insurance" (the "Application") on the life of Ms. Snyder. A copy of the Application is attached as Exhibit "A." (Appropriate redactions of personal information have been made.)

14. The Application sought a $3 million life insurance policy, naming Snyder Family 2004 Delaware Trust dated June 24, 2004 (the "Trust") as the "owner" and "beneficiary." *Id.* at 1-2.

15.    The Application identified the Trust as a Delaware trust, formed under Delaware law on June 24, 2004, and acting at the direction of a Delaware trustee, Capital Trust Company of Delaware. *Id.* at 3-4.

16.    The Application represented that the proposed insurance would be used for Ms. Snyder's "Personal and Family Protection." *Id.* at 4.

17.    The Application was signed on July 28, 2004 in Wilmington, Delaware by Alan R. Halpern, an officer of Capital Trust Company of Delaware, as trustee of the Trust, which was the Policy's proposed owner and beneficiary. *Id.* at 3.

18.    The Application declared that the statements and answers in the Application were true and complete to the best of the signatories' knowledge and belief. *Id.* at 3.

19.    Thus, in completing the Application, the signatories knew that they were required to provide truthful, accurate, and honest responses to the questions presented. Furthermore, they knew that Columbus Life would rely upon the statements recorded on the Application in determining whether to issue a policy with the face amount requested, or whether to issue a policy at all.

20.    In reliance upon the representations contained in the Application and other documents and information submitted to Columbus Life in connection with the Application, Columbus Life issued a policy with a $3 million death benefit (policy number CM5011668U) (the "Policy") with an issue date of June 28, 2004.

21.     Upon information and belief, the initial premiums to fund the Policy were paid by an entity known as Columbus Circle Capital LLLP ("Columbus Circle"), by way of a non-recourse premium finance loan that neither Ms. Snyder nor anyone in her family was required to repay.

22.     Upon information and belief, Columbus Circle and/or the persons or entities working with it lacked an insurable interest in Ms. Snyder's life and were participating in a wager on her life so that they might profit from her death.

23.     In or around August 2004, the Policy was reissued with a $1 million death benefit.

24.     Approximately one year later, in June 2005, Columbus Life received a request to transfer the ownership and beneficiary of the Policy from the Trust to the law firm of Erwin & Johnson, LLP, who later transferred the beneficiary to "GVEC Preferred Shares B1 Trust dated February 28, 2005" ("GVEC Trust") on October 25, 2005, and the ownership to the GVEC Trust on November 1, 2005, but continued to serve as trustee.  Erwin & Johnson resigned as trustee of GVEC Trust in October 2007, when the law firm of Daily & Knudson, LLC, became the trustee.

25.     Approximately five years later, on April 20, 2012, Columbus Life received another request to transfer the ownership and beneficiary of the Policy from GVEC Trust to Wells Fargo, as securities intermediary.  Wells Fargo is the current owner and beneficiary of the Policy.

**B.**    **The Policy was Procured as Part of an Illegal Wagering Scheme to Gamble on the Life of Ms. Snyder**

26.    Columbus Life has determined, on information and belief, that the Policy was at all times material hereto meant as an illegal wager on the life of Ms. Snyder. Columbus Life has further determined, on information and belief, that the Policy lacked an insurable interest prior to and at its inception and that any appearance of insurable interest was superficial only and was in reality a complete and total sham designed to conceal the true wagering nature of the purported Policy.

27.    Columbus Life has further determined, upon information and belief, that the Trust itself was an illegal sham created to give the false appearance of a valid insurance trust established for valid "Personal and Family Protection," and thus to give the superficial—but entirely false—appearance of a legitimate insurable interest.

28.    Moreover, upon information and belief, the source of the funds for the initial premium payment on the Policy was not Ms. Snyder or any person or valid entity possessing an insurable interest in her life. Instead, the source of the premium was Columbus Circle and/or other persons or entities who lacked an insurable interest in Ms. Snyder's life and were participating in a wager on her life.

29.    Upon information and belief, to disguise the true wagering nature of the Policy, the stranger entities, acting together to generate the Policy, knowingly and intentionally misrepresented material information and affirmatively concealed

7

material information from Columbus Life so as to intentionally mislead and induce Columbus Life into issuing a policy that it otherwise would have rejected. Upon information and belief, and among other things, this included:

a. Falsely representing that the Trust was established for a legitimate purpose. Instead, upon information and belief, the Trust was established solely for the purpose of making an illegal wager on the life of Ms. Snyder in violation of applicable Delaware law. The Trust furthered this unlawful scheme by (1) giving the appearance of a valid Delaware statutory trust and (2) acting as the owner and beneficiary of the Policy so as to conceal that the real owner in interest, the real beneficiary in interest, and the real payor of premium was a stranger to Ms. Snyder. In reality, the Trust was a sham, and the stranger entities acting together to generate the Policy concealed the truth from Columbus Life.

b. Upon information and belief, the premiums were paid, by Columbus Circle and its associates pursuant to the terms of a non-recourse premium financing agreement. Upon information and belief, at no point did the Trust or Ms. Snyder provide any of the funding for the premium payments, nor did they ever intend to pay the premium or any associated loans from personal funds, nor was this disclosed to Columbus Life.

c. Falsely declaring in the Application that the Policy would be used for Ms. Snyder's "Personal and Family Protection." In fact, the Policy was never meant to serve as "Personal and Family Protection" for Ms. Snyder but was always intended to benefit stranger-investors who sought to use the Policy as an instrumentality to illegally wager on Ms. Snyder's life.

d. Affirmatively representing to Columbus Life that the insurance sought was suitable for the stated insurance objectives and needs. Upon information and belief, neither Ms. Snyder nor the Trust had any true need for the proposed insurance for "Personal and Family Protection."

e. Falsely declaring in the Application that the "representations recorded in this application are true and complete to the best of my knowledge and belief, and constitute the primary basis for the issuance of any insurance hereunder." Instead, the stranger entities acting together to generate the Policy knew and intended for their statements, answers, and representations to be false and misleading, and otherwise concealed the truth from Columbus Life.

30. Upon information and belief, as part of the illegal wagering scheme, the stranger entities acting together to generate the Policy misrepresented and otherwise concealed from Columbus Life that, from the outset, the Policy was intended to be transferred to a different owner with no insurable interest in the insured.

31.     The identity of the true owner and beneficiary of the Policy was, therefore, continually concealed from Columbus Life.

32.     Although Columbus Life believes that the Policy is void *ab initio* for lack of insurable interest at inception, Columbus Life has reason to believe that Wells Fargo disagrees. Moreover, Columbus Life recognizes that it is the province of this Court to decide this issue and to make a declaration as to the Policy's validity. As a consequence—and without waiver of its right to challenge the validity of the Policy—Columbus Life intends to treat the Policy as administratively in-force for the pendency of the lawsuit, meaning among other things, that Columbus Life will continue to accept premium payments, should Wells Fargo choose to make them, and to deduct cost of insurance under the Policy's terms and conditions.

## FIRST CAUSE OF ACTION

## DECLARATORY JUDGMENT –
## ILLEGAL HUMAN LIFE WAGERING CONTRACT

33.     Columbus Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

34.     The Policy was applied for and signed in Delaware by a Delaware statutory trust, as owner and beneficiary of the Policy. The Policy was then actually delivered to the trustee of the Trust, Capital Trust Company of Delaware, a Delaware corporation, at its offices in Wilmington, Delaware. The Policy is governed by Delaware law.

35. The Delaware Constitution provides that "[a]ll forms of gambling are prohibited in this State except [those explicitly set forth in the statute]." Del. Const. Art. II, § 17. Moreover, the Delaware Supreme Court has addressed the issues associated with life insurance policies used to wager on the death of insureds and has held that, under Delaware law, such policies are mere wagering contracts and are void *ab initio*. *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059 (Del. 2011).

36. As set forth herein, the Policy was, from the outset, procured by third parties and intended as a wager on the life of Ms. Snyder. Whether Ms. Snyder knew the details of this scheme or her identity was merely used as an instrumentality to procure the Policy, stranger investors were wagering on Ms. Snyder's life and hoping to trigger a secondary market cash-in on the Policy's $1 million death benefit.

37. Accordingly, Columbus Life seeks, and is entitled to, a declaratory judgment that the Policy was an illegal wagering contract that violated the Delaware Constitution and the public policy of Delaware, thus rendering the Policy void *ab initio*, meaning that the Policy never came into existence.

## SECOND CAUSE OF ACTION

## DECLARATORY JUDGMENT – LACK OF INSURABLE INTEREST

38. Columbus Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

39. The Policy was intentionally structured to be a "trust-owned insurance policy" as defined by Delaware's insurable interest statute, 18 Del. C. § 2704(e)(4). Because the Policy was delivered to the place of business of the trustee of the Trust, Capital Trust Company of Delaware, at its offices in Wilmington, Delaware, the existence of an insurable interest "shall be governed by [Delaware's insurable interest statute] without regard to [the] insured's state of residency or location." 18 Del. C. § 2704(g).

40. Under Delaware law, a valid and legitimate insurance trust can have a valid insurable interest in the life of the insured. *See* Del. C. § 2704(c)(5).

41. However, because the Trust was an illegitimate cover for the wager on Ms. Snyder's life, the Trust lacked any insurable interest in the life of Ms. Snyder. Accordingly, no insurable interest existed at the time of issuance of the Policy, and the Policy is void *ab initio* for lack of insurable interest.

42. Additionally, the Policy was applied for and issued at the behest of individuals or entities—with no insurable interest in the life of the insured—who procured the Policy for the purpose of benefitting stranger investors in the life insurance secondary market. Accordingly, the Policy is void *ab initio* for lack of an insurable interest.

43.     Therefore, Columbus Life seeks, and is entitled to, a declaratory judgment that the Policy lacked insurable interest because it was procured by and for the benefit of strangers without any insurable interest under Delaware law.

44.     WHEREFORE, Columbus Life respectfully requests the entry of an Order by this Court as follows:

A.      Declaring that the Policy is void *ab initio* due to it having been procured as a wagering contract on the life of Ms. Snyder;

B.      Declaring that the Policy is void *ab initio* due to it having been procured without a valid insurable interest at inception;

C.      Declaring that because the Policy is void *ab initio* it never existed;

D.      Declaring that because the Policy is void *ab initio* the Court will leave the parties to this illegal contract as it finds them, thus permitting Columbus Life to retain the premiums paid on the Policy, or, in the alternative, declaring that Columbus Life may retain some or all of the premiums paid on the Policy to effectuate an offset with respect to Columbus Life's costs and losses associated with the Policy;

E.      Awarding Columbus Life attorneys' fees and costs associated with bringing this lawsuit, as determined by the Court; and

F.      Awarding Columbus Life any further relief this Court deems appropriate.

DATED:  June 1, 2020                    DONALD L. GOUGE, JR., LLC


                                        /s/ Donald L. Gouge, Jr. (#2234)
                                        DONALD L. GOUGE, JR. (DSB #2234)
                                        800 N. King Street, Suite 303
                                        Wilmington, DE 19801
                                        (302) 658-1800, Ext. 1

                                        COZEN O'CONNOR
                                        1201 North Market St., Suite 1001
                                        Wilmington, DE  19801

                                        Michael J. Miller (*pro hac vice to be filed*)
                                        Joseph M. Kelleher (*pro hac vice to be filed*)
                                        Philip J. Farinella (*pro hac vice to be filed*)
                                        COZEN O'CONNOR
                                        1650 Market St., Suite 2800
                                        Philadelphia, PA 19103

                                        *Attorneys for Plaintiff,*
                                        *Columbus Life Insurance Company*

EFiled: Jun 01 2020 03:59PM EDT
Transaction ID 65669062
Case No. N20C-06-013 PRW

# Exhibit A



# Columbus Life
## Insurance Company

400 East Fourth Street • P.O. Box 5737 • Cincinnati, Ohio 45201-5737 • 1-800-677-9696 • www.ColumbusLife.com

**Application for Life Insurance**

---

**A. Proposed Insured** (Print first name, middle initial and last name)

Name: _Ann Snyder_   ☑ Female ☐ Male   Birth Date: ▓▓▓▓   Age _80_

SS# or Tax ID # ▓▓▓▓▓▓▓▓▓▓   Birth Place _NJ_   Ht _5'3_   Wt _219_

Occupation (employer, job duties, etc.) _Retired_

---

**B. Other Insured** (Print first name, middle initial and last name)   Relationship to Insured _____

☐ Female ☐ Male   Birth Date _____   Age _____

Name _____

SS# or Tax ID # _____   Birth Place _____   Ht _____   Wt _____

Occupation _____

---

**C. Coverage Applied For** If applying for Variable Life, please Complete Supplement to Application.   If UL or VUL, Death Benefit Option:

Plan of Insurance _Mainsail_   $ _3,000,000_   ☑ #1  ☐ #2
(Plan Name)   (Base Amount)

Term Select Period:
☐ 10 Year  ☐ 20 Year  ☐ 30 Year

$ _____
Additional Life Rider (SCR) Amount
(If Applicable)

$ _3,000,000_
(Total Base Plus SCR Amount)

---

**D. Supplemental Benefits and Riders**

☐ Waiver of Premium   ☐ Waiver of Monthly Deductions   ☐ Capital Transfer Rider
☐ Disability Credit Rider–(If UL or VUL, show Monthly Credit Amt.) $ _____   ☐ Return of Premium Rider
☐ Insured Insurability Rider (Amt.) $ _____   ☐ Change of Insured Rider
☐ Accidental Death Benefit $ _____  ☐ #1  ☐ #2   ☐ Other Insured Rider (Amt.) $ _____
☐ Automatic Increase Rider (Percentage) _____   ☑ Other _Accelerated Death Benefit Rider_
☐ Extended Maturity Plus – ☐ Pay at issue, or ☐ Pay at Age 80   _Plus_
☑ No Lapse Guarantee  ☐ Intermediate  ☑ Lifetime

---

**E. Children** (for Children's Rider)   No. of Units _____

| Name | Sex | Age | State of Birth | Birth Date | Height | Weight |
|------|-----|-----|----------------|------------|--------|--------|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

---

**F. Owner of Policy** (Print first name, middle initial and last name) – Proposed Insured shall be owner unless otherwise shown

Name _Snyder Family 2004 Delaware Trust_

Birth Date _6/24/04_   SS#/Tax ID # _____   Relationship to Insured _Trust_

---

**G. Contingent Owner** (Print first name, middle initial and last name)

Name _____

Birth Date _____   SS#/Tax ID # _____   Relationship to Insured _____

---

CL 45,300 A (10/03)

Page 1 of 15

**H.** **Beneficiaries** (Print first name, middle initial and last name)

Primary _Same as owner_      Relationship to Insured _Trust_

Contingent _____      Relationship to Insured _____

| **I.** Does the applicant have any existing individual life insurance or annuity contracts with any company? | | ☒ Yes ☐ No | |
|---|---|---|---|
| Proposed & Other Insureds (specify) | Company | Amt | Accidental Death Amt    Yr Issued |

Ann Snyder    Mass Mutual    $1,000,000

             Prudential    $1,000,000

             Manu    $5,000,000          2003

**J.** **Replacement:**

1. Will the insurance or annuity applied for, if issued, replace an existing policy in this or another company? ........................ ☐ Yes ☒ No

2. If "Yes," is this replacement a: (a) Section 1035 tax-deferred exchange? ..................................................................... ☐ Yes ☒ No

                         (b) tax-qualified exchange of pension benefits? .......................................................... ☐ Yes ☐ No

3. If "Yes," list the company name, policy number, and type of policy(ies) being replaced.

_____

_____

**K.** **Background on Proposed and Other Insureds and Children listed in A, B, and E:**

1. Driver's license number(s) and state(s) ███████

2. In the past five years, had driver's license suspended or revoked or had two or more moving violations? ...................................

3. During the past ten years, have you consulted a physician or medical practitioner for, or been treated for: high blood pressure, cancer, tumors, diabetes, ulcers, heart, lung, or liver disorder, mental or nervous disorder, or back or spine disorder? ...............

4. Has ever been diagnosed as having or been treated for AIDS (Acquired Immune Deficiency Syndrome), ARC (AIDS-Related Complex) or any other immune deficiency disorder? .....................................................................................

5. Have used sedatives, stimulants, hallucinogenic or narcotic drugs other than those prescribed by a physician or medical practitioner, or been treated for drug or alcohol use? .............................................................................

6. Ever been declined, postponed, rated or modified for insurance or reinstatement? ...................................................................

7. **Within the past 12 months** has any proposed insured smoked a cigarette or used any tobacco products? ...............................

8. In the past three years, has any proposed insured participated in the following: parachuting, scuba diving, motor racing or aviation other than regular commercial airline flights? If "Yes," complete a Supplemental Questionnaire.

9. Has any immediate family member (parents, brothers or sisters) had heart disease, diabetes, or cancer prior to age 60? ...............

Personal Physician Name/Address: _____████_____

_____

_____

Details to "Yes" answers and/or Special Instructions (For "Yes" answers, please list question #, the name of the person proposed for insurance and the date, physician, hospital, address, and phone.)

███████████████████

**I understand and agree to the following:**

A. The representations recorded in this application are true and complete to the best of my knowledge and belief, and constitute the primary basis for the issuance of any insurance hereunder.

B. Only an authorized underwriter of the Company at its Home Office has the power to determine insurability.

C. No agent is authorized to make or alter contracts, to extend the time for payment of premiums, or to waive any of the Company's rights or requirements;

D. If the Company accepts 1/12 of the minimum annual premium and a Temporary Insurance Agreement is duly executed, the Company is liable under this application to the extent provided in the Temporary Insurance Agreement. Otherwise, the Company shall incur no liability under this application unless a policy issued on this application has been received by the Owner, the first premium has been paid and any limitation or modification of insurance applied for has been agreed to in writing by the owner, all while the health of the person(s) now proposed for coverage and any other conditions remain as described in the application.

E. If the Company amends this application by endorsement, acceptance of any policy issued shall constitute a ratification of change or correction **only** to clarify the intent of the policy and/or coverage as applied for on the application without reduction in benefit.

**AUTHORIZATION TO OBTAIN INFORMATION:** I authorize any physician or other medical practitioner, hospital, clinic, other medical care institution, other companies or institutions, my employer, consumer reporting agency or the Medical Information Bureau, Inc., to give Columbus Life Insurance Company, or its reinsurers, information about me or my health for underwriting purposes. Except for the Medical Information Bureau reports, information may, in some cases, be obtained by authorized representatives of Columbus Life.

This information may include an investigative consumer report, other insurance coverage, details of employment, or medical care including diagnosis, advice, treatment and prognosis of any physical and mental condition regarding me or any of my minor children to be insured. I further consent to the release of any drug- or alcohol related information which may be protected by federal regulations.

**USE AND DISCLOSURE:** I understand that Columbus Life will use this information to determine eligibility for insurance and/or benefits. Also, Columbus Life may release this information to the Medical Information Bureau, Inc., reinsurance companies and/or to other insurance companies to which I may apply for insurance and/or benefits.

This Authorization is valid for two and one-half years from the date shown below unless a shorter period is legally required. I understand that I have the right to receive a copy of this Authorization upon request. A photocopy of this Authorization will be as valid as the original.

**MIB, INC.:** We will treat all information about your insurability as confidential. However, we, or our reinsurer(s) may make a report to MIB, Inc., a non-profit organization. MIB, Inc., operates an information exchange for its member life insurance companies. MIB, Inc., will supply the information it has to a member company on request. The request may be made when you apply for life insurance or when you make a claim for benefits. If you ask MIB, Inc., it will arrange to disclose to you any information it has in your file. If you believe any of this information is incorrect, you may request a correction according to the procedures in the Federal Fair Credit Reporting Act. MIB's address is: P.O. Box 105, Essex Station, Boston, Massachusetts, 02112, telephone: (617) 426-3660.

We may collect personal information from persons other than the individual or individuals proposed for the *insurance* coverage. This information, as well as other personal or privileged information subsequently collected by us or our agent may, in certain circumstances, be disclosed to third parties without your authorization. You have a right to access and correct all personal information we collect. A more complete description of your rights and our obligations will be furnished upon request. Please call (800) 677-9696 (Monday-Friday, 8:00 a.m. to 5:45 p.m.) for more information

Under penalties of perjury, I certify that (1) the number shown on this form is my correct Taxpayer Identification Number, and (2) I am not currently subject to backup withholding as a result of Internal Revenue Service notification. **The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

**WARNING:** *Any person who, with intent to defraud, or knowing that he or she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.*

Signed at _WILMINGTON_ _DE_   Date _6/24/04_   (X) _Ann Snyder_
(City and State)                                        Signature of Proposed Insured (age 15 or older)

_Robert W. Lucia_   _The Capital Trust Ca of DE, as Trustee_
Senior Vice President

Signature of Applicant/Owner if other than Proposed Insured    Signature of Proposed Other Insured

_ED LEISCHER_   X _____   _114717_
Agent's Name (Please Print)    Agent's Signature    License No.

Agent/Producer's Certification - To the best of my knowledge, a replacement ☐ is ☑ is not involved in this transaction. I also certify that prior to signing this application, I delivered to the applicant any proposal, outline of coverage, Buyer's Guide, comparison and/or disclosure statement required by federal law or by the law of the state where the application was signed.

Date _6/25/04_   Signature of Agent X _____

**PRODUCER'S REPORT**
**COLUMBUS LIFE INSURANCE COMPANY APPLICATION FOR INSURANCE - Page 9**

**1. Purpose of Insurance Applied For:**

- [x] Personal and Family Protection
- [ ] Key Person Insurance
- [ ] Buy - Sell
- [ ] Split Dollar
- [ ] 1035 Exchange
- [ ] Other (specify)

- [ ] Defined Benefit
- [ ] Money Purchase
- [ ] Profit Sharing
- [ ] 403(b) - 501(c) Plan

**2. A. Is a Current Examination being made?**  [x] Yes  [ ] No
(If yes, give type of exam below)

- [ ] Paramed Exam
- [ ] M.D. Exam
- [ ] HOS
- [ ] Other (Specify) _____

- [x] Blood Profile
- [x] EKG
- [ ] Stress EKG

**B.** Was Inspection Report Ordered?  [x] Yes  [ ] No
Specify Company (Hooper Holmes/Infolink or I MSI) _____

**3. PHI/Inspection Information** (Always complete)
**Residence Address of Proposed Insured:** (Please print)

No. & Street ████████████ How Long? ___ Yrs.  State of Residence __PA__

City & State ████████████ Zip __15108__  State where Employed __ALLA__

Telephone Numbers
Home (area code) ████████████ Extension No. _____ During Day [x] Yes [ ] No

Business (area code) _____ Extension No. _____ During Day [ ] Yes [ ] No

Is proposed insured or spouse generally at home during day?  [x] Yes  [ ] No

Most convenient time and place for interview call? __Am__

**Billing Name and Address:** (If not same as residence address above) - (Please print)

| First Name | M.I. | Last Name |
|---|---|---|
| | | |

Street Address or P.O. Box Number

| City | State | Zip Code |
|---|---|---|
| | | |

**4. Premium Amount and Mode of Premium Payment**
NOTE: 2 months' premium required for monthly mode.

| | Modal Premium Amount | Mode |
|---|---|---|
| Life | $ 14,085 | Monthly |
| Annuity | $ | |
| Total | $ | |

**Total Amount Paid at time of Application $ 222,105**

**6. Credit Application To:** (Please Print)

| | | % of App | Code No. |
|---|---|---|---|
| General Agent | | | |
| Agent | Ed Leigher | 60 | 43666 |
| Agent | Burt Kavanaugh | 40 | 73232 |
| Agent | | | |

Writing Agent's Phone No. (area code) __301-493-9236__

Writing Agent's Fax No. (area code) __301-493-5703__

E-Mail _____

**5. Future Premiums** - after first has been paid:

- [ ] **None -- Lump Sum**
- [x] **Direct bill** MONTHLY
  - [ ] Annually  [ ] Semiannually  [ ] Quarterly
- [ ] **Pre-Authorized Transfer – 2 months required**
  - [ ] New Plan  [ ] Existing Plan
  - Month and Day of first withdrawal _____
- [ ] **Account Bill**
  - [ ] New Plan (Will be assigned by H.O.)
  - [ ] Existing Plan No.
  - Payable [ ] Monthly [ ] Annually [ ] Semiannually [ ] Quarterly
- [ ] **Government Allotment** (See Marketing Manual Rules.)
  - [ ] New Plan  [ ] Existing Plan No.

**PLEASE COMPLETE REVERSE SIDE – AGENT'S MARKETING REPORT**