## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COLUMBUS LIFE INSURANCE COMPANY,

       Plaintiff,

       v.                               C.A. No. 20-833-MN-JLH

WELLS  FARGO  BANK,  N.A.,  as  Securities
Intermediary,

       Defendant.

## REPORT AND RECOMMENDATION

This dispute arises out of an insurance policy on the life of Ann Snyder.  Plaintiff Columbus Life Insurance Company says that the policy is an illegal stranger-originated life insurance ("STOLI") policy, and it seeks a declaration from the Court that the policy is void *ab initio*. Defendant Wells Fargo Bank, N.A. says that the policy is valid.  Defendant has also pleaded a number of affirmative defenses as well as various tort and estoppel counterclaims.  Those affirmative defenses and counterclaims are at issue here.

For the reasons explained below, I recommend that Columbus Life's Motion to Strike Wells Fargo's Affirmative Defenses (D.I. 13) be GRANTED.  I recommend that Columbus Life's Motion to Dismiss Wells Fargo's Counterclaims (D.I. 15) be GRANTED-IN-PART and DENIED-IN-PART.

## I.      BACKGROUND

"Since the initial creation of life insurance during the sixteenth century, speculators have sought to use insurance to wager on the lives of strangers."  *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr., ex rel. Christiana Bank & Tr. Co.*, 28 A.3d 1059, 1069 (Del. 2011) ("*Price Dawe*"). In response to the practice, the law developed a requirement that a person seeking to take out a life

insurance policy on another have some reason to want the insured to remain alive.  That concept is now known as the "insurable interest" requirement.  The United States Supreme Court has articulated the public policy behind the requirement as follows:

> [T]here must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured.  Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured.  Such policies have a tendency to create a desire for the event.  They are, therefore, independently of any statute on the subject, condemned, as being against public policy.

*Warnock v. Davis*, 104 U.S. 775, 779 (1881) (emphasis added); *see also Price Dawe*, 28 A.3d at 1069 (quoting *Warnock*); *Baltimore Life Ins. Co. v. Floyd*, 91 A. 653, 656 (Del. Super. Ct. 1914), *aff'd,* 94 A. 515 (1915) ("To avoid [the situation] in which a beneficiary may become interested in the early death of the insured, it is held that the insurance upon a life shall be effected and resorted to only for some benefit incident to or contemplated by the insured, and that insurance procured upon a life by one or in favor of one under circumstances of speculation or hazard amounts to a wager contract and is therefore void, upon the theory that it contravenes public policy.").

Like most states, Delaware has an insurable interest requirement.  *Price Dawe*, 28 A.3d at 1069-70.  Pursuant to 18 Del. C. § 2704(a), subject to certain exceptions, "[1] [a]ny individual of competent legal capacity may procure or effect an insurance contract upon his or her own life or body for the benefit of any person, [2] but no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable [i] to the individual insured or his or her personal representatives or [ii] to a person having, at the time when such contract was made, an insurable interest in the individual insured."  18 Del. C. § 2704(a); *Price Dawe*, 28 A.3d at 1073.  The first clause says that a person

may take out an insurance policy on his own life and make it payable to anyone, even a stranger. *Price Dawe*, 28 A.3d at 1073. The second clause says that, if a policy is taken out on the life of another, the benefits must be payable to either (i) the person insured or his/her personal representative or (ii) someone who, at the time the insurance contract was made, had an "insurable interest" in the insured. *Id.* The statute defines those with an "insurable interest" to include, among others, "individuals related closely by blood or by law [who have a] substantial interest engendered by love and affection," the trustee of a trust created and funded by the insured, and other individuals with "a lawful and substantial economic interest in having the life, health or bodily safety of the individual insured continue." 18 Del. C. § 2704(c).

The Delaware insurable interest statute does not bar a person from taking out a policy on his own life in good faith and then transferring it to someone without an insurable interest. *Price Dawe*, 28 A.3d at 1068, 1074. Because life insurance policies have value, and it is legal to transfer them, a secondary market for them has emerged. Over time, however, increased market demand for high-dollar policies led to some undesirable effects, as the Delaware Supreme Court concisely explained in 2011:

> Over the last two decades [prior to 2011], . . . an active secondary market for life insurance, sometimes referred to as the life settlement industry, has emerged. This secondary market allows policy holders who no longer need life insurance to receive necessary cash during their lifetimes. The market provides a favorable alternative to allowing a policy to lapse, or receiving only the cash surrender value. The secondary market for life insurance is perfectly legal. Indeed, today it is highly regulated. In fact, most states have enacted statutes governing secondary market transactions, and all jurisdictions permit the transfer or sale of legitimately procured life insurance policies. Virtually all jurisdictions, nevertheless, still prohibit third parties from creating life insurance policies for the benefit of those who have no relationship to the insured. These policies, commonly known as "stranger originated life insurance," or STOLI, lack an insurable interest and are thus an illegal wager on human life.

> In approximately 2004, securitization emerged in the life settlement industry. Under this investment method, policies are pooled into an entity whose shares are then securitized and sold to investors. Securitization substantially increased the demand for life settlements, but did not affect the supply side, which remained constrained by a limited number of seniors who had unwanted policies of sufficiently high value. As a result, STOLI promoters sought to solve the supply problem by generating new, high value policies.

*Price Dawe*, 28 A.3d at 1069-70.  Since STOLI promotors could not legally take out life insurance policies for the benefit of investors who lacked an insurable interest, they concocted various schemes to conceal what they were up to.  The details of the schemes vary, but the basic idea is that a "stranger" persuades a senior citizen to obtain a life insurance policy on his own life so that the policy can subsequently be transferred and sold in the market.  To induce the senior to participate, the stranger may fund the policy premiums and may even pay compensation to the senior.  *Price Dawe*, 28 A.3d at 1076.

In its seminal decision in *Price Dawe* in 2011, the Delaware Supreme Court held that life insurance policies procured via STOLI schemes violate the Delaware insurable interest requirement.  According to the Court, "if [a] third party uses the insured as an instrumentality to procure [a life insurance] policy, then the third party is actually causing the policy to be procured, which the second clause of section 2704(a) proscribes." *Id.* at 1074.  The Court further held that STOLI policies were void *ab initio*[1] because they violate Delaware's public policy against wagering and, thus, cannot be enforced, "no matter what the intentions of the parties." *Id.* at 1067-68.

---

[1] "*Ab initio*" means "from the beginning."  Black's Law Dictionary (11th ed. 2019).

## II.     FACTUAL ALLEGATIONS[2]

At issue in this action is a $1 million insurance policy on the life of Ann Snyder.

In June 2004, Ms. Snyder applied to Plaintiff Columbus Life Insurance Company ("Columbus Life") for a life insurance policy on her own life (the "Policy").  (D.I. 4 ("Ans."), Counterclaims ("CC") ¶ 9.)  She was 80 years old at the time.  (*Id.*)  She set up a trust to be the owner and beneficiary of the policy.  (*Id.* ¶¶ 10, 12.)  Columbus Life issued the Policy on or about June 28, 2004.  (*Id.* ¶ 13.)

The ownership and beneficial interest in the Policy was transferred several times.  (*Id.* ¶ 15.)  The latest transfer occurred in April 2012, when Defendant Wells Fargo Bank, N.A. ("Wells Fargo") became the owner and beneficiary, as securities intermediary.  (*Id.* ¶ 16.)  Columbus Life approved the transfer.  (*Id.* ¶ 17.)

When Wells Fargo acquired the Policy, it was unaware that it was a STOLI policy. (CC ¶ 56.)  At the time of the transfer, Columbus Life did not indicate that it believed the Policy was void *ab initio* or that Wells Fargo would not be entitled to payment of the death benefit.  (*Id.* ¶¶ 17-18.)  At some point, Columbus Life became suspicious that the Policy was illegal, but rather than reveal its suspicions, it continued to bill for and collect premium payments from Wells Fargo.  (*Id.* ¶¶ 23, 31-32.)  Columbus Life also sent Wells Fargo verification of coverage statements, Policy illustrations, and annual reports, all of which suggested to Wells Fargo that the Policy was valid and that Columbus Life would pay the death benefit when Ms. Snyder died.  (*Id.* ¶ 23.)  Wells Fargo "relied on [Columbus Life's] repeated promises and representations . . . in deciding to continue making premium payments on the Policy."  (*Id.* ¶ 24.)

_____

[2] I assume the facts alleged in Defendant's Counterclaims to be true for purposes of resolving the motion to dismiss them for failure to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Since the Policy's issuance, Columbus Life has collected more than $1 million in premiums from Wells Fargo and its predecessors. (*Id.* ¶¶ 19-20.) On June 1, 2020, however, Columbus Life filed this action to avoid paying the $1 million death benefit. According to Columbus Life, the Policy was obtained as part of a STOLI scheme and is therefore void. (D.I. 1, Ex. A ("Compl.") ¶¶ 26, 36-37.)

Columbus Life's Complaint contains two counts. The first seeks a declaration that the Policy is void *ab initio* because it is an illegal human life wagering contract that violates the Delaware Constitution and state public policy. (*Id.* ¶¶ 33-37.) The second count seeks a declaration that the Policy is void *ab initio* for lack of an insurable interest under the Delaware insurable interest statute, 18 Del. C. § 2704. (*Id.* ¶¶ 38-43.)

Wells Fargo's Answer denies that the Policy is void. (Ans. ¶¶ 36-37, 43.) It further alleges that "[f]or all or part of 16 years, Columbus has known or should have known of the circumstances that support its present contention" that the Policy is void, and that "[b]y choosing to wait to bring a suit until now, Columbus chose to keep the Policy in force, rather than challenge the Policy, so that it could enrich itself with premiums and interest for as long as possible." (*Id.*, CC ¶¶ 31-32.)

Wells Fargo's Answer sets forth six defenses: "failure to state a claim" (First Affirmative Defense); "statute of limitations and other time bars" (Second Affirmative Defense); "waiver and estoppel" (Third Affirmative Defense); "unclean hands" (Fourth Affirmative Defense); "lack of standing" (Fifth Affirmative Defense); and "lack of jurisdiction" (Sixth Affirmative Defense).

The Answer also contains four counterclaims. The first seeks a declaration (i) that Columbus Life is liable to pay a claim on the Policy upon receipt of Ms. Snyder's death certificate and (ii) that Columbus Life is estopped from challenging the Policy as void *ab initio* and/or that it has waived its right to challenge the Policy as void *ab initio*. (Ans., CC ¶¶ 25-35 (First

6

Counterclaim).)  The second is pleaded in the alternative and seeks a declaration that Columbus Life is required to return all premium payments for the Policy, plus interest, if the Policy is found to be void *ab initio*.  (*Id.* ¶¶ 36-42 (Second Counterclaim).)  The third is for negligent misrepresentation.  (*Id*. ¶¶ 43-50 (Third Counterclaim).)  The fourth counterclaim, also pleaded in the alternative, is for promissory estoppel.  (*Id.* ¶¶ 51-60 (Fourth Counterclaim).)

On August 19, 2020, Columbus Life filed a motion to strike Wells Fargo's second through fifth affirmative defenses (D.I. 13), and it filed a separate motion to dismiss all of Wells Fargo's counterclaims (D.I. 15).  These motions are presently pending before the Court.  I heard oral argument on both motions on October 29, 2020 ("Tr.").

## II.    LEGAL STANDARDS

### A.    Motion to Strike

"As a general matter, motions to strike under Rule 12(f) are disfavored."  *Fesnak & Assocs., LLP v. U.S. Bank Nat. Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010) (citing *Seidel v. Lee,* 954 F. Supp. 810, 812 (D. Del. 1996)).  A court should not grant a motion to strike a defense from a pleading unless it is clearly insufficient.  *Celgene Corp. v. Fresenius Kabi USA, LLC*, No. CV 14-571-RGA, 2015 WL 8023233, at *2 (D. Del. Dec. 7, 2015).   A defense may be deemed insufficient if "it is not recognized as a defense to the cause of action," and it can be stricken on the basis of the pleadings alone if it "could not possibly prevent recovery under any pleaded or inferable set of facts."  *In re ASHINC Corp.*, No. 12-11564, 2017 WL 2774736, at *5 (D. Del. June 27, 2017) (quoting *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 93 (D.N.J. 2014)).

### B.    Motion to Dismiss

A party may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "[C]ourts use the same standard in ruling on a motion to dismiss a

counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Lieberman v. BeyondTrust Corp.*, No. 1:19-CV-01730-RGA, 2020 WL 1815547, at *1 (D. Del. Apr. 9, 2020) (internal quotations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A possibility of relief is not enough. *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not.  *Id.* at 679.

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal marks omitted).

## III.    DISCUSSION

### A.    Wells Fargo's Affirmative Defenses

Columbus Life wants the Court to strike four of Wells Fargo's defenses: statute of limitations and other time bars; waiver and estoppel; unclean hands; and lack of standing.  Wells Fargo has now agreed to withdraw its statute of limitations and standing defenses.  Thus, remaining in dispute are the waiver/estoppel and unclean hands defenses.  As to the former, Wells Fargo contends that Columbus Life has "waived" its right to challenge, and/or is "estopped" from challenging, the validity of the Policy.  (Ans. ¶ 47; *id.*, CC ¶¶ 32-35.)  The latter alleges that

Columbus Life is "barred by the doctrine of unclean hands" from obtaining a declaration of unenforceability.  (Ans. ¶ 48.)

Columbus Life argues that the doctrines of waiver, estoppel, and unclean hands cannot be used to prevent a challenge to a void *ab initio* life insurance policy.  Columbus Life is not saying that the defenses are insufficiently pleaded as a technical matter.  Instead it contends that, no matter what facts are discovered, waiver/estoppel and unclean hands have no application here, and the defenses should therefore be stricken.  I agree.

Estoppel is an equitable doctrine that may permit enforcement of a promise notwithstanding the non-occurrence of a contract condition.  *Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 12-13 (Del. 2000) (discussing promissory and equitable estoppel); *First Fed. Sav. & Loan Ass'n of New Castle Cty. v. Nationwide Mut. Fire Ins. Co.*, 460 A.2d 543, 545-46 (Del. 1983) (discussing the application of estoppel to an insurer).  The doctrine of unclean hands "is a rule of public policy" that permits a court to refuse a request for equitable relief "in circumstances where the litigant's own acts offend the very sense of equity to which he appeals."  *Nakahara v. NS 1991 Am. Tr.*, 718 A.2d 518, 522 (Del. Ch. 1998) (citation omitted).

As courts have explained, a contract that is void *ab initio* because it violates public policy may not be enforced through the application of equitable doctrines.  *See, e.g., U.S. Bank Nat'l Ass'n v. Sun Life Assurance Co. of Canada,* No. 14-4703, 2016 WL 8116141, at *19 (E.D.N.Y. Aug. 30, 2016) ("*Van de Wetering*") (applying Delaware law and holding that estoppel and unclean hands defenses "are inapplicable to a STOLI policy which has been declared void *ab initio*"), *R. & R. adopted,* 2017 WL 347449 (E.D.N.Y. Jan. 24, 2017); *Sun Life Assurance Co. of Canada v. U.S. Bank Nat'l Ass'n*, No. 14-62610, 2016 WL 161598, at *19-20 (S.D. Fla. Jan. 14, 2016) ("*Malkin*") (applying Delaware law and holding that estoppel and unclean hands defenses "fail as a matter of

law" where they would result in enforcement of a contract that is void *ab initio*), *aff'd in part, rev'd in part on other grounds*, 693 F. App'x 838 (11th Cir. 2017); *Wilmington Sav. Fund Soc'y, FSB v. PHL Variable Ins. Co.*, No. 13-499-RGA, 2014 WL 1389974, at *12 (D. Del. Apr. 9, 2014) (dismissing promissory estoppel claim because "a contract that is void *ab initio* may not be enforced equitably through estoppel"); *Sun Life Assurance Co. of Canada v. Wilmington Tr., Nat'l Ass'n,* No. N17C-08-331, 2018 WL 3805740, at *3 (Del. Super. Ct. Aug. 9, 2018) ("*De Bourbon*") (striking estoppel defense because "a contract that is void *ab initio* may not be enforced equitably through estoppel"); *cf. Absalom Tr. v. Saint Gervais LLC*, No. 2018-0452-TMR, 2019 WL 2655787, at *3-4 (Del. Ch. June 27, 2019) ("Equitable defenses can validate voidable acts but not void acts."). To hold otherwise would frustrate the public policy that makes the contract unenforceable in the first place.

Employing equitable doctrines to prevent Columbus Life from challenging the validity of the Policy would also be contrary to the rationale underlying *Price Dawe*, if not its holding. That case also involved an insurer seeking a declaration that a life insurance policy was void. The owner of the policy contended that the insurer was prohibited from bringing a court challenge because the (statutorily-required) two-year contestability period set forth in the policy had expired. *Price Dawe*, 28 A.3d at 1063-68. The Delaware Supreme Court rejected that argument. It held that the insurer could challenge the enforceability of the policy because "[a] court may never enforce agreements void *ab initio*." *Id.* at 1067-68.

Here, Wells Fargo puts forth its estoppel and unclean hands theories as defenses, which means they will only come into play if the Court has already determined that the Policy is void *ab initio*. But employing the doctrines of estoppel or unclean hands to prevent Columbus Life from

challenging a void insurance policy is, under the reasoning of *Price Dawe*, essentially the same thing as enforcing the policy, which the Delaware Supreme Court says courts cannot do.

The doctrine of waiver likewise has no applicability here.  It is a contract law doctrine that allows enforcement of a contractual promise notwithstanding the non-occurrence of a contract condition.  *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 27 A.3d 522, 529-30 (Del. 2011) (discussing waiver).  As explained above, if the Policy is void *ab initio*, this Court cannot enforce Columbus Life's contractual promise to pay the death benefit.  *Cf. Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, No. 14-5789, 2016 WL 5746352, at *11-12 (D.N.J. Sept. 30, 2016) ("The Policy here is a violation of public policy and void *ab initio*. As such, there is no contract at all, and waiver . . . do[es] not apply." (applying New Jersey law)), *aff'd sub nom. Sun Life Assurance Co. of Canada v. Wells Fargo Bank NA*, 779 F. App'x 927 (3d Cir. 2019).

In an effort to save its defenses, Wells Fargo points to the district court's bench ruling in *Sun Life v. U.S. Bank*, No. 17-75-LPS, D.I. 29, 66:7-67:3, 76:3-6 (D. Del. Sept. 5, 2017) ("*Sol I*"), another STOLI case.  Wells Fargo correctly points out that, early in that case, the Court denied an insurer's motion to strike a policy owner's waiver/estoppel and unclean hands defenses.  *Id.* (citing *PHL Variable Ins. Co. v. ESF QIF Tr.*, No. 12-319-LPS, 2013 WL 6869803, at *6-7 (D. Del. Dec. 30, 2013) ("Griggs")).  Later in the *Sol* case, the Court granted partial summary judgment to the insurer on the basis that the policy was void *ab initio* for lack of an insurable interest.  *Sun Life Assurance Co. Canada v. U.S. Bank Nat'l Ass'n*, 369 F. Supp. 3d 601, 617 (D. Del. 2019) ("*Sol II*"), *reconsideration denied*, No. 17-75-LPS, 2019 WL 2052352 (D. Del. May 9, 2019) ("*Sol III*"). And after that, the Court denied the policy owner's request to instruct the jury on its waiver/estoppel and unclean hands defenses.  *Sun Life Assurance Co. Canada v. U.S. Bank Nat'l Ass'n*, No. 17-75-LPS, D.I. 287 Tr. of Jury Trial – Volume E at 1028-38 (May 24, 2019); *id.*, D.I.

267 (D. Del. May 28, 2019) (final jury instructions).  Read together, the Court's rulings in *Sol* are not inconsistent with my conclusion that the defenses of waiver, estoppel, and unclean hands are not applicable against an insurer's claim that a life insurance contract is void *ab initio* for lack of an insurable interest.

The combined rulings in *Sol* are not contrary to my recommendation that the Court strike Wells Fargo's waiver/estoppel and unclean hands defenses.  If the Policy on Ms. Snyder's life is not void, Columbus Life loses, and Wells Fargo does not need any defenses.[3]  If the Policy is void *ab initio*, the defenses are inapplicable.  The defenses are therefore legally insufficient under any set of facts and, accordingly, I recommend that the Court strike them.[4]

### B.    Wells Fargo's First Counterclaim for a Declaratory Judgment

Wells Fargo's first counterclaim requests a declaration (i) that Columbus Life is liable to pay a claim on the Policy upon receipt of Ms. Snyder's death certificate and (ii) that Columbus Life is estopped from challenging the Policy as void *ab initio* and/or that it has waived its right to challenge the Policy as void *ab initio*.  (Ans., CC ¶¶ 25-35 (First Counterclaim).)

The first part of Wells Fargo's request is appropriate.  Wells Fargo is entitled to seek a declaration that the death benefit is payable because the Policy is not void.  The second part is inappropriate for the reasons set forth above.  Accordingly, I recommend that the first counterclaim be dismissed-in-part.

---

[3] *See* Tr. at 48:22-24 (Counsel for Wells Fargo: "[I]f this contract exists, the waiver/estoppel doesn't matter, the contract is what it is.").

[4] At oral argument, Wells Fargo suggested that its estoppel and waiver defenses might operate to require Columbus life to return its premium payments.  (Tr. 50:15-51:6.)  That argument was not properly before the Court.  Regardless, that is not a proper application of the doctrines of estoppel and waiver.

### C.       Wells Fargo's Second Counterclaim for a Declaratory Judgment

Wells Fargo's second counterclaim seeks a declaration that Columbus Life must return the premiums paid on the Policy if it is declared void *ab initio*.   Columbus Life argues that the counterclaim should be dismissed because parties to a STOLI policy declared void *ab initio* for lack of an insurable interest should be left where they are found without repayment of premiums.

The counterclaim should not be dismissed at this stage.   I view the counterclaim as essentially a request for restitution.   Columbus Life is correct that wrongdoers who are parties to an illegal contract "ordinarily" have no remedy against each other.   *See, e.g., Della Corp. v. Diamond*, 210 A.2d 847, 849 (1965); *see also* Restatement (Second) of Contracts § 197 (1981). But it does not dispute that an investor who made payments on a STOLI policy may obtain restitution from the insurer under certain circumstances.[5]   That is consistent with the Restatement of Contracts, the Restatement of Restitution and Unjust Enrichment, and the case law, all of which suggest that a party to a contract that is void for violating public policy can sometimes be required to pay restitution.   *See* Restatement (Second) of Contracts § 198 (1981); Restatement (Third) of Restitution and Unjust Enrichment § 32 (2011); *Brighthouse Life Ins. Co. v. Geronta Funding*, No. N18C-04-028-DCS, 2019 WL 8198323, at *2-3 (Del. Super. Ct. Mar. 4, 2019) ("*Seck I*"); *interlock. certif. denied*, 2019 WL 8198324, at *2-3 (Del. Super. Ct. Mar. 14, 2019) ("*Seck II*").

The Restatement (Second) of Contracts § 198 provides, in pertinent part:

> A party has a claim in restitution for performance that he has rendered under or in return for a promise that is unenforceable on grounds of public policy if

---

[5] Tr. 17:10-14 (Counsel for Columbus Life: "[I]t is theoretically possible for an investor to make a claim to get its premium back in an appropriate case provided they prove that it is not the ordinary case.").

(a) he was excusably ignorant of the facts . . . , in the absence of which the promise would be enforceable, or

(b) he was not equally in the wrong with the promisor.

*See* Restatement (Second) of Contracts § 198; *see also* cmt. b (explaining that "[t]he general rule that neither party is entitled to restitution is subject to an exception in favor of a party who is not equally in the wrong, or as it is sometimes said is not *in pari delicto*, with the party from whom he seeks restitution," as provided in subsection (b)).  Relying on that section of the Restatement, the Delaware Superior Court in *Seck* concluded that a party to a void life insurance policy may obtain restitution depending on the facts of the case.  *Seck I*, 2019 WL 8198323, at *4 (denying insurer's motion for judgment on the pleadings on policy owner's claim for restitution because "further factual development is necessary to determine whether the exceptions in § 198, which would allow restitution, are applicable"); *cf. Sun Life Assurance Co. of Canada v. Wells Fargo Bank*, N.A., 208 A.3d 839, 858-59 (N.J. 2019) ("*Bergman*") (holding, under New Jersey law, that a litigant may be able to recover premium payments made on a void STOLI policy depending upon "the relative culpability of the parties").[6]

---

[6] The Restatement (Third) of Restitution and Unjust Enrichment § 32 similarly permits restitution under certain factual circumstances.  It provides:

> A person who renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy may obtain restitution from the recipient in accordance with the following rules:
>
> (1) Restitution will be allowed, whether or not necessary to prevent unjust enrichment, if restitution is required by the policy of the underlying prohibition.
>
> (2) Restitution will also be allowed, as necessary to prevent unjust enrichment, if the allowance of restitution will not defeat or frustrate the policy of the underlying prohibition. There is no unjust enrichment if the claimant receives the counterperformance specified by the parties' unenforceable agreement.

The Delaware Supreme Court has yet to tell us whether and under what circumstances restitution can be recovered from an insurer when a policy is found to be an illegal STOLI policy. But federal courts applying Delaware law have consistently permitted requests for the return of premium payments, even if they weren't expressly styled as claims for restitution. *See, e.g., Van de Wetering*, 2016 WL 8116141, at *19 (determining that policy owner was "entitled to a return of the premiums it paid out on the Policy" under Delaware law); *PHL Variable Ins. Co. v. Chong Son Pak Life Ins. Tr.*, No. 12-314-RGA, 2012 WL 13201401, at *1 (D. Del. July 25, 2012); *PHL Variable Ins. Co. v. Virginia L. Lankow Life Ins. Tr.*, No. 12-315-RGA, 2012 WL 13201402, at *1 (D. Del. July 25, 2012); *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Tr.*, 774 F. Supp. 2d 674, 682 (D. Del. 2011) (holding, pre-*Price Dawe*, that insurer could not simultaneously challenge a policy as STOLI and seek to retain premiums); *Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 565 (D. Del. 2010) (same); *Sun Life Assurance Co. of Can. v. Berck*, 719 F. Supp. 2d 410, 419 (D. Del. 2010) (same); *cf. Sun Life Assurance Co. of Can. v. U.S. Bank Nat'l Assoc.*, No. 17-75-LPS, 2019 WL 8353393, at *1 (D. Del. Dec. 30, 2019).  And there is little reason to think that the Delaware Supreme Court would hold that restitution would never be allowed.[7]  As one court in this district has explained, if an insurance company could challenge the enforceability of the policy at any time while also retaining the premiums, "it would have the undesirable effect of

---

(3) Restitution will be denied, notwithstanding the enrichment of the defendant at the claimant's expense, if a claim under subsection (2) is foreclosed by the claimant's inequitable conduct.

Restatement (Third) of Restitution and Unjust Enrichment § 32 (2011).

[7] Contrary to Columbus Life's argument, *In re American International Group, Inc.* does not suggest that restitution is appropriate *only* where a party was either tricked or in a protected class.  976 A.2d 872, 883 (Del. Ch. 2009), *aff'd sub nom. Teachers' Ret. Sys. of Louisiana v. Gen. Re Corp.*, 11 A.3d 228 (Del. 2010).

15

incentivizing insurance companies to bring . . . suits as late as possible, as they continue to collect premiums at no actual risk." *Snyder*, 722 F. Supp. 2d at 565.

Wells Fargo has plausibly alleged facts suggesting that it was "not equally in the wrong" with Columbus Life. *See* Restatement (Second) of Contracts § 198(b). It alleges that at the time it acquired the Policy, it was unaware it was a STOLI policy. (Ans., CC ¶ 56.) It also alleges that Columbus Life suspected that the Policy was illegal, but rather than inform Wells Fargo of those suspicions, Columbus Life continued to collect premium payments from Wells Fargo. (*Id* ¶¶ 31-32.) Those facts make it at least plausible that Columbus Life was more "in the wrong" than Wells Fargo and that it would therefore be entitled to some amount of restitution under the circumstances set forth in § 198 of the Restatement.

Whether restitution is appropriate under the facts of this case, and how much,[8] is a fact issue not appropriate for resolution at the motion to dismiss stage. All that needs to be said now is that a request for restitution is plausibly alleged. I recommend that the Court deny Columbus Life's motion to dismiss the second counterclaim.

### D.     Wells Fargo's Fourth Counterclaim for Promissory Estoppel

Wells Fargo's fourth counterclaim, alleged in the alternative, is a claim for promissory estoppel. Columbus Life argues that the counterclaim should be dismissed. The dispute is not whether Wells Fargo has sufficiently alleged the elements of a promissory estoppel claim, but rather whether the doctrine of promissory estoppel may be invoked against the issuer of a STOLI policy. I agree with Columbus Life that it cannot.

---

[8] The parties dispute, for example, whether Wells Fargo can recover premium payments made by its predecessors.

16

Promissory estoppel "is an equitable remedy designed to enforce a contract in the interest of justice where some contract formation problem would otherwise prevent enforcement." *J.C. Trading Ltd. v. Wal-Mart Stores, Inc.*, 947 F. Supp. 2d 449, 457 (D. Del. 2013) (quoting *Weiss v. Nw. Broad., Inc.,* 140 F. Supp. 2d 336, 344-45 (D. Del. 2001)). To state a claim for promissory estoppel, a plaintiff must plausibly allege the following: "(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise." *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 876 (Del. Sept. 10, 2020) (quoting *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 347-48 (Del. 2013)). Under Delaware law, if there is a valid and enforceable contract, there is no claim for promissory estoppel. *See Mosiman v. Madison Companies, LLC*, No. CV 17-1517-CFC, 2019 WL 203126, at *4 (D. Del. Jan. 15, 2019) ("In other words, '[p]romissory estoppel does not apply . . . where a fully integrated, enforceable contract governs the promise at issue.'" (quoting *SIGA Techs.*, 67 A.3d at 348)).

If Columbus Life fails to prove that the Policy is unenforceable—that is, if a valid contract exists—then Wells Fargo's promissory estoppel claim loses as a matter of law. So the question is: can the doctrine of promissory estoppel be invoked against an insurer on a policy that has been held to be unenforceable because it violates public policy? I don't think it can.

A claim for promissory estoppel requires a promise. If the promise that Wells Fargo seeks to enforce is Columbus Life's promise in the life insurance contract that it will pay a $1 million death benefit upon Ms. Snyder's death, the Court cannot enforce that promise. As explained above, a promise in a contract that is void *ab initio* "may never" be enforced by the Court. *Price Dawe*, 28 A.3d at 1067. Thus, Wells Fargo's promissory estoppel claim is insufficient as a matter

of law to the extent it seeks to enforce Columbus Life's contractual promise to pay the death benefit. *Wilmington Sav. Fund Soc'y*, 2014 WL 1389974, at *12; *De Bourbon*, 2018 WL 3805740, at *3; *Sun Life Assurance Co. of Canada v. Wilmington Tr., N.A.*, No. N18C-07-289, 2019 Del Super. LEXIS 2614, at *2 (Del. Super. Ct. Apr. 3, 2019) ("*Frankel*").

Not so fast, says Wells Fargo: that is not promise we are seeking to enforce.   According to Wells Fargo, Columbus Life also made a subsequent "promise to comply with its promise to pay the $1 million death benefit when Ms. Snyder dies" so long as Wells Fargo continued making premium payments.[9]  (Ans., CC ¶¶ 53, 54, 57, 58.)  As an initial matter, I am not sure that Wells Fargo has plausibly alleged that Columbus Life ever made such a promise.  I am also skeptical that a promise to perform an unenforceable contractual obligation is something that the Delaware Supreme Court would say is redressable under the doctrine of promissory estoppel.

In my view, however, the most glaring problem with Wells Fargo's position is that any subsequent promise to pay a death benefit in return for premium payments would itself constitute an unenforceable, illegal wager on the life of Ms. Snyder.  Wells Fargo does not have an insurable interest in Ms. Snyder's life.  If Columbus Life made a separate promise to pay Wells Fargo a benefit upon her death in return for premium payments, that would amount to a separate illegal wager on human life, and a court "may never" enforce it.  *Price Dawe*, 28 A.3d at 1067.

Wells Fargo acknowledges that the Delaware state courts to consider the issue, and at least one judge in this district, have dismissed similar estoppel claims.  But it points to two cases from this district that have allowed such claims to move forward.  *See Griggs*, 2013 WL 6869803, at

---

[9] *See also* Tr. 57:17-23 (Counsel for Wells Fargo: "[P]ost formation . . . of the contract at some point in time between that period and today Columbus Life told my client that it would pay a $1 million death benefit if my client paid the premiums. And that promise, unrelated to the underlying policy, is what we are talking about.").

*6-7 (denying motion to dismiss promissory estoppel counterclaim); *Sun Life Assurance Co. Can. v. U.S. Bank Nat'l Assoc.*, No. CV 17-75 LPS, 2019 WL 2151695, at *6-7 (D. Del. May 17, 2019) ("*Sol IV*") (denying insurer's renewed motion for summary judgment on policy owner's promissory estoppel claim).   What I will say about *Sol* and *Griggs* is this: I agree with their rationale that it may be unjust to allow an insurer that intends to challenge a policy to promise to an innocent policy owner that it will pay the death benefit, continue to collect premiums on the policy, and then later renege on that promise.   *See Griggs*, 2013 WL 6869803, at *6, 8 (holding that promissory estoppel claim could proceed because "as a matter of equity, some relief must be available" to a policy owner who is not *in pari delicto); see also Sol IV*, 2019 WL 2151695, at *5-6 (citing *Griggs*).   I also agree with *Sol* that restitution may be appropriate under such circumstances.   *Sun Life Assurance Co. Can. v. U.S. Bank Nat'l Assoc.*, No. CV 17-75 LPS, 2019 WL 8353393, at *3-5 (D. Del. Dec. 30, 2019) ("*Sol V*") (awarding restitution but not expectation damages under a promissory estoppel theory).   As discussed above, the owner of an unenforceable STOLI policy may have a claim for restitution in certain circumstances, including where the insurer is more in the wrong than the policy owner.   S*ee* Section III.C, *supra*; Restatement (Second) of Contracts § 198 (permitting restitution where party to unenforceable contract is not *in pari delicto*).

My narrow disagreement with *Sol* and *Griggs* relates to the theory under which restitution is available.   As explained above, I do not think that restitution is available under a promissory estoppel theory because, in my view, a court may never enforce a promise to pay on a STOLI policy, or even a promise to perform a promise to pay on a STOLI policy.

I recommend that the Court dismiss Wells Fargo's fourth counterclaim.

19

### E.      Wells Fargo's Third Counterclaim for Negligent Misrepresentation

Wells Fargo's third counterclaim alleges negligent misrepresentation.   Wells Fargo contends that Columbus Life implicitly represented—by billing for premiums and by sending verification of coverage statements and other reports—that the Policy was valid even though it never intended to pay.  I agree with Columbus Life that the counterclaim, as pleaded, fails to state a claim of negligent misrepresentation.

To assert a claim for negligent misrepresentation under Delaware law, a plaintiff must plead that "(1) the defendant had a pecuniary duty to provide accurate information, (2) the defendant supplied false information, (3) the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff[s] suffered a pecuniary loss caused by justifiable reliance upon the false information.'" *Otto Candies, LLC v. KPMG LLP*, No. CV 2018-0435-MTZ, 2019 WL 994050, at *17 (Del. Ch. Feb. 28, 2019) (quoting *Steinman v. Levine*, No. 19-107, 2002 WL 31761252, at *15 (Del. Ch. Nov. 27, 2002), *aff'd*, 822 A.2d 397 (Del. 2003)).  However, where a contract governs the parties' relationship, a tort claim cannot be maintained unless it arises from a duty independent of the contractual duty.  *Audubon Eng'g Co., LLC v. Int'l Procurement & Contracting Grp., LLC*, No. 13-1248-LPS, 2015 WL 4084053, at *4 (D. Del. July 6, 2015), *aff'd*, 647 F. App'x 95 (3d Cir. 2016) ("[U]nder Delaware law, . . . the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract.'" (quoting *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009))).

In this case, the relationship between the parties arose from the Policy.  The *only* alleged misrepresentations are Columbus Life's implicit suggestions that it intended to pay out on the Policy, which *at best*, amount to statements by Columbus Life that it intended to perform under

20

the contract, as opposed to challenge its validity.[10]  And the only alleged damages are Wells Fargo's costs of performance under the contract.[11]  If the contract were enforceable, Wells Fargo could not bring a tort claim to recover damages for Columbus Life's failure to perform.  And any determination by this Court that the Policy is unenforceable does not change the fact that Columbus Life's duty to be truthful to Wells Fargo about whether it intended to perform, if any, arose from the parties' relationship under the Policy.  I think it is exceedingly unlikely that the Delaware Supreme Court would recognize a negligent misrepresentation claim where the defendant's only duty to the plaintiff arose from a contract that was later determined to be void *ab initio*.  Stated another way, I do not believe that Delaware law permits a policyholder to recover in tort economic damages incurred as the result of performing an illegal contract if the reason the damages are not recoverable in contract is because the contract is unenforceable.[12]

Accordingly, I recommend that the Court dismiss Wells Fargo's third counterclaim.  If Wells Fargo later discovers facts that would support a negligent misrepresentation claim, it can seek leave to amend its pleading at that time.

---

[10] (*See* D.I. 20 (Wells Fargo's Ans. Br.) at 16-18; Tr. 34:16-17, 35:10-15.)

[11] (*See* Ans., CC ¶ 45 (alleging costs to purchase the Policy and premiums to keep the Policy in effect).)

[12] Moreover, it is unclear to me what Wells Fargo could recover from its negligent misrepresentation counterclaim that it could not recover with a claim for restitution, which appears to be a more appropriate form of relief.

### III.   CONCLUSION

In sum, I recommend the following:

1.      Columbus Life's Motion to Strike Wells Fargo's Affirmative Defenses (D.I. 13) should be GRANTED.  The Court should strike Wells Fargo's Second, Third, Fourth, and Fifth affirmative defenses.

2.      Columbus Life's Motion to Dismiss Wells Fargo's Counterclaims (D.I. 15) should be GRANTED-IN-PART and DENIED-IN-PART.

a.      The Court should dismiss the First Counterclaim only insofar as it seeks a declaration that Columbus Life is estopped from challenging the Policy as void *ab initio* and/or that it has waived its right to challenge the Policy as void *ab initio*.

b.      The Court should not dismiss the Second Counterclaim.

c.      The Court should dismiss the Third and Fourth Counterclaims.

3.      Wells Fargo should be granted leave to amend its Answer within 30 days.  Although some of its counterclaims are deficient as a matter of law under the circumstances alleged, the Court is unable to say on this record that any amendment would necessarily be futile.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1.  Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages.  Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.


Dated: January 12, 2021

_____
Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE